```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
         v.                  )    Cr. No. 13-cr-10245-MLW
                             )
JEREMY LAWRENCE              )
```

MEMORANDUM AND ORDER REGARDING MOTION TO SUPPRESS

WOLF, D.J.                                      February 25, 2016

This memorandum is based on the transcript of the decision rendered orally on August 27, 2015, denying defendant Jeremy Lawrence's Motion to Suppress Evidence Seized During Warrantless Search of an Automobile and Person (Docket No. 28) (the "Motion"). See Aug. 27, 2015 Transcript. This memorandum adds background information and citations, clarifies some language, and refines some discussion.

* * * *

I. INTRODUCTION

On June 21, 2013, defendant Jeremy Lawrence was stopped by Braintree Police Detective Michael Reynolds for a traffic violation. During the stop, Reynolds discovered twenty-one bags of cocaine in Lawrence's possession. On August 14, 2013, Lawrence was indicted for possession of cocaine with intent to distribute, in violation of 21 U.S.C. §841(a)(1).

On April 4, 2014, Lawrence filed a motion to suppress all evidence and information obtained incident to the traffic stop. Lawrence argues that the stop was unlawful because he had not committed any traffic violation. He further argues that the ensuing search of his car and person was improper because the drugs discovered were not in plain view. The government responded that the stop was justified because Lawrence did commit a traffic violation and that the search was proper for three reasons. First, other evidence in plain view gave the Detective probable cause. Second, the search was incident to a lawful arrest for driving without a license. Third, the defendant committed intervening criminal acts that purged the taint of any impropriety in the initial traffic stop.

For the following reasons, Lawrence's motion to suppress is being denied.

II. STANDARDS

Where a warrantless stop and search were conducted, the burden is on the government to prove that the stop and search were reasonable within the meaning of the Fourth Amendment. See Florida v. Harris, 133 S. Ct. 1050, 1055 (2013). The applicable standards relating to the Fourth Amendment include the following.

"[A] traffic stop constitutes a seizure of both the stopped vehicle and its occupants for Fourth Amendment purposes.

Consequently, a traffic stop must satisfy a standard of objective reasonableness." United States v. Arnott, 758 F.3d 40, 43 (1st Cir. 2014) (citation omitted). "[P]olice officers conducting an investigatory stop must have 'reasonable suspicion.'" United States v. Jones, 700 F.3d 615, 621 (1st Cir. 2012) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). "Reasonable suspicion requires more than a naked hunch, but less than probable cause." Arnott, 758 F.3d at 44 (citations omitted). A traffic violation is an objectively reasonable basis for a traffic stop. Id. at 44 n.5 (defendant "roll[ing] through a stop sign" provided "independently sufficient ground for stopping the car").

"[R]easonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition," if the mistake was objectively reasonable. Heien v. North Carolina, 135 S.Ct. 530, 536 (2014). "The constitutional reasonableness of traffic stops" does not "depend[] on the actual motivations of the individual officers involved." Whren v. United States, 517 U.S. 806, 813 (1996). If there was an objectively reasonable proper basis for the stop, the fact that something else may have motivated the officer to exercise his discretion to make the stop is legally not relevant.

An initial stop can be extended in time and scope to the extent reasonable based on the information the officer has in an

evolving situation. There must be a lawful basis for such an expansion. More specifically, "while an officer's actions must bear some relation to the purpose of the original stop, he may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the detention." United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001). "An officer's 'subsequent actions must be responsive to the emerging tableau -- the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.'" United States v. Am, 564 F.3 25, 32 (1st Cir. 2009) (quoting United States v. Coplin, 463 F.3d 96, 100 (1st Cir. 2006)).

The officer's mounting suspicions must be informed by evidence obtained lawfully. See Chhien, 266 F.3d at 10 (continued detention permissible where trooper's suspicions elevated by "lawfully learn[ing] about" new evidence). An officer may not extend the traffic stop beyond its original purposes without reasonable suspicion. "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez v. United States, 135 S.Ct. 1609, 1615 (2015).

4

With regard to searches incident to arrest, "the search-incident-to-arrest exception permits an arresting officer to 'search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.'" United States v. Wurie, 728 F.3d 1, 3 (1st Cir. 2013) (quoting Chimel v. California, 395 U.S. 752, 763 (1969)). "The probable cause justifying a lawful custodial arrest, and therefore a search incident to that arrest, need not be for the charge eventually prosecuted." United States v. Bizier, 111 F.3d 214, 218 (1st Cir. 1997). The exact sequence of the search and arrest is not determinative. "'[W]hether a formal arrest occur[s] prior to or follow[s] 'quickly on the heels' of a challenged search does not affect the validity of the search so long as . . . probable cause [to arrest] existed prior to the search.'" United States v. Lawlor, 406 F.3d 37, 42 n.4 (1st Cir. 2005) (quoting Bizier, 111 F.3d at 217) (all but first alteration in original).

III. THE LAWFULNESS OF THE TRAFFIC STOP

The facts proven by a preponderance of the evidence include the following. On June 21, 2013, Detective Reynolds, then a member of the Braintree Police Department, was on traffic duty in a marked cruiser. He saw a person who turned out to be Lawrence driving at a rapid rate of speed with two wheels that had crossed the "fog

line." A "fog line" is the line that would be on the passenger side of a vehicle some distance from the edge of the road.

Detective Reynolds did a computer check on the plate. He found that it was registered to Shawn Woodford at 51 Storrs Avenue in Braintree, Massachusetts. The day before, Quincy Police Detective Michael Duran had asked him to be on the lookout for a drug dealer Duran had information indicating was registering cars in the name of Woodford at 51 Storrs Avenue.

Detective Reynolds believed that the right two wheels of the vehicle crossing the fog line violated Massachusetts General Law Chapter 89 Section 4A. That statute states that "[w]hen any way has been divided into lanes, the driver of a vehicle shall so drive that the vehicle shall be entirely within a single lane, and he shall not move from the lane in which he is driving until he has first ascertained if such movement can be made with safety." M.G.L. c. 89, §4A.

Lawrence argues that Section 4A applies to dangerous crossings of the lines between lanes, and not to crossings of the fog line that are not dangerous. The court is not deciding whether driving on a divided highway with two wheels across the fog line is a violation of Section 4A. As explained below, it may or may not be a violation. However, if it was not a violation of the

statute, Detective Reynolds had made an objectively reasonable mistake in believing that it was a violation.

In Heien, 135 S.Ct. at 539, the Supreme Court recently established the relevant test. In that case, the Court found that an objectively reasonable mistake of law, like an objectively reasonable mistake of fact, does not render a search unlawful under the Fourth Amendment. Justice Elena Kagan discussed the meaning of this objective reasonableness test. In her concurrence, she stated, "[i]f the statute is genuinely ambiguous such that overturning the officer's judgment requires hard interpretive work, then the officers made a reasonable mistake, but if not, not." Id. at 541 (Kagan, J., concurring). Putting it another way, she wrote, "[t]he test is satisfied when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view." Id.

This is a case in which a reasonable judge could agree with Detective Reynolds's view. For example, Justice Robert Cordy, writing for the Supreme Judicial Court, recently described the crossing of a fog line as a marked lanes violation, stating:

> The truck pulled out in front of [the officer]'s vehicle, and, in so doing, crossed the fog line. The truck then moved back into its travel lane, but subsequently crossed the fog line again, swerved over the double yellow lines, and swerved back to the fog line. After observing these three marked lane violations, [the officer] began to pursue the truck, activating his cruiser's full light bar.

7

Commonwealth v. Jewett, 471 Mass. 624, 625 (2015) (emphasis added). Therefore, in Jewett, the Supreme Judicial Court treated crossing the fog line as a violation of Section 4A, although it did not analyze the issue.

Similarly, now-Chief Judge Scott Kafker, writing for the Massachusetts Appeals Court, upheld the trial judge's factual finding on a motion to suppress that the government had not proven a violation of Section 4A because it had not proven the alleged fact that the defendant had crossed the fog line. Although it does not appear that the issue was litigated, both the trial court and the Appeals Court appear to have assumed that crossing the fog line would be a violation of Section 4A.

In contrast, Judge Patti Saris, in dicta, has essentially credited the defendant's argument here. In United States v. Brito-Melo, 2006 WL 2559860 (D. Mass. Sept. 5, 2006), she wrote:

> Although the car went over the fog line at least once . . . , there is no evidence that it swerved in a way suggestive of drunk driving or cellphone inattentiveness. There is also no evidence the minor infraction involving a mini-swerve into the breakdown lane was unsafe in any way.

Id. at *6.

Similarly, in Commonwealth v. Santos, 2007 WL 2851015 (Mass. Sup. Ct. May 18, 2007), the Superior Court found that Section 4A "ha[d] no application" to the crossing of a line marking the edge of a single-lane highway entrance ramp:

8

> The evidence establishes that the entrance ramp where the defendant crossed slightly over the white line was not divided into lanes, but had a single travel lane. The white line served not to divide the lanes, but to alert the driver to the edge of the travel lane and the nearby guardrail. The statute has no application to these facts, and provides no basis for the stop.

Id. at *3. Santos may not be directly on point, however, as it involved a highway entrance ramp with a single lane. The Superior Court concluded that Section 4A, which applies to "any way [that] has been divided into lanes," did not apply. Id.

These four cases indicate that the issue is so doubtful in construction that a reasonable judge could agree with Detective Reynolds's belief that crossing the fog line violates Section 4A. Without further study, this court is unable to answer the question. The statute at issue is ambiguous and overturning the officer's judgment would require hard interpretive work. Therefore, if Lawrence's argument about the meaning of Section 4A is correct, that officer made a reasonable mistake. Any such reasonable mistake provided the reasonable suspicion necessary to make the traffic stop. See Heien, 135 S.Ct. at 536.

The court does not believe that the officer made that stop solely because he was concerned about what he believed to be a marked lane violation. He exercised his discretion to make the stop because he had received a call the night before from Detective Duran of the Quincy Police Department, who asked him to be on the

lookout for somebody known as "Jerm," a suspected drug dealer who registered his cars in the name of Shawn Woodford at 51 Storrs Avenue in Braintree. As Detective Reynolds watched the car go by, he ran the plate on his computer and saw it was registered to Woodford at 51 Storrs Avenue. Therefore, he believed that "Jerm" had just driven by him and that he had a proper basis to stop him.

The court believes that Detective Reynolds's substantial motivation for making the stop was the desire to pursue a drug investigation. However, as explained earlier, the Supreme Court held in Whren, 517 U.S. at 813, that the constitutional reasonableness of a traffic stop does not depend on the actual motivation of the officer involved. In these circumstances, as long as Detective Reynods had a proper basis to stop the vehicle, his motive for doing so is not material.

IV.   LAWFULNESS OF SEARCH

What occurred after Detective Reynolds stopped the vehicle was also reasonable within the meaning of the Fourth Amendment. He asked the driver, Lawrence, for a driver's license. Lawrence said he did not have a license. In Massachusetts, driving without a driver's license is an arrestable offense. See Commonwealth v. Lantigua, 38 Mass. App. Ct. 526, 527-28; Commonwealth v. Stack, 49 Mass. App. Ct. 227, 233-34 (2000); Votta v. Burt, 2011 WL 6064914, *2 (D. Mass. Dec. 7, 2011) ("If a vehicle stop is valid, an officer

has the right to demand that the driver produce his license and registration. If a driver fails to demonstrate that he has a valid license, he is subject to arrest.") (citing M.G.L. c. 90, §§10, 21) (citations omitted).

As Detective Reynolds had the right to arrest Lawrence, he had the right to search him; the exact sequence of the arrest and search is not dispositive. See Lawlor, 406 F.3d at 42 n.4. He had observed Lawrence making motions consistent with putting something in his mouth. He asked Lawrence for his name, date of birth, and Social Security number. Lawrence gave him his name and date of birth, but the Social Security number he provided twice failed to be confirmed by a computerized search. When he approached the vehicle he smelled marijuana. Lawrence had told the Detective he had been smoking marijuana and gave him a bag of it. In Detective Reynolds's experience such conduct was at times an effort to discourage a search that would discover more dangerous drugs. While the arrest was justified by Lawrence's failure to produce a driver's license alone, these additional facts reinforced the reasonableness of continuing the investigation.

The court is not relying on Detective Reynolds's testimony that he saw plastic bags in plain view under the driver's seat through the window. Further consideration would be necessary to

11

decide whether that testimony is credible. It is not, however, material to the merits of the motion to suppress.

After Detective Reynolds learned that Lawrence did not have a valid driver's license, and after he had the other information the court has found to be proven, Reynolds ordered Lawrence to get out of the car and directed him to sit on the ground. He twice asked him to open his mouth and raise his tongue. Lawrence did not raise his tongue far enough for Reynolds to see under it. Reynolds suspected that there were drugs hidden there from the movements that had been made in the car, including but not limited to the movement that looked like something being placed in Lawrence's mouth.

When Lawrence refused to put his legs out, which would have made it more difficult to flee, he said to the Detective words to the effect of, "If you're going to arrest me, arrest me." Lawrence was handcuffed. At that time, at least, he was under arrest. At that point, Detective Reynolds had the authority to conduct a search incident to arrest, including looking under the defendant's tongue to see if there was contraband that was being concealed and potentially destroyed. See Wurie, 728 F.3d at 3. Therefore, that search was lawful.

When Detective Reynolds had Lawrence on his feet, he ordered him to open his mouth again and shined a flashlight in it. Reynolds

observed glassine bags and saw the defendant trying to swallow them. He put his hands on Lawrence's throat to try to keep him from swallowing, and concealing or potentially destroying the evidence. That too was permissible and reasonable.

V. ORDER

In view of the foregoing, Lawrence's Motion to Suppress Evidence Seized During Warrantless Search of an Automobile and Person (Docket No. 28) is DENIED.

                                                /s/ Mark L. Wolf
                                                UNITED STATES DISTRICT JUDGE